IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KEVIN ANTHONY KANTOR,

    Plaintiff,

v.                                                                                 Civ. No. 21-717 KK

KILOLO KIJAKAZI,
Acting Commissioner of the
Social Security Administration,

    Defendant.

**MEMORANDUM OPINION AND ORDER**[1]

THIS MATTER is before the Court on Plaintiff Kevin Anthony Kantor's Motion to Reverse and Remand for Payment of Benefits or, in the Alternative, for Rehearing (the "Motion") (Doc. 21), filed March 15, 2022. The Acting Commissioner of the Social Security Administration ("Commissioner") filed a response in opposition on June 15, 2022, and Mr. Kantor filed a reply in support on July 5, 2022. (Docs. 29, 32.) Having meticulously reviewed the entire record and the relevant law, and being otherwise sufficiently advised, the Court finds that Mr. Kantor's Motion is well-taken and should be GRANTED.

I. **BACKGROUND**

**A. Background and Procedural History**

On November 10, 2015, Mr. Kantor, now 52 years old, applied for Social Security Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401

---

[1] Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have consented to the undersigned to conduct dispositive proceedings and order the entry of final judgment in this case. (Doc. 25.)

*et seq.*, alleging disability due to post-traumatic stress disorder ("PTSD"), TMJ Syndrome,[2] fibromyalgia, depression, anxiety, chronic fatigue, chronic muscle pain, Persian Gulf War Syndrome, chronic joint pain, and cervical strain. (AR[3] 180); (Doc. 21 at 2.) Mr. Kantor was self-employed as a real estate broker before he claims he became disabled. (AR 443–45, 1437.) In the application, Mr. Kantor alleged that his inability to work began on March 1, 2015. (AR 181, 1430); (Doc. 21 at 2.)

Mr. Kantor's claim was denied initially on February 12, 2016, upon reconsideration on June 11, 2016, and in a written decision (the "First Unfavorable Decision") dated September 21, 2016, after a hearing. (AR 215); (Doc. 21 at 2.) The Appeals Council remanded the First Unfavorable Decision for an administrative law judge ("ALJ") to evaluate the Department of Veterans' Affairs' assessment that Mr. Kantor is 100% permanently disabled and to consider and clarify the role of Mr. Kantor's "'moderate' difficulties in social functioning" on his residual functional capacity. (AR 234.) The Appeals Council also instructed the ALJ to develop the record regarding Mr. Kantor's impairments, "further evaluate [his] mental impairments . . . [and] provid[e] specific findings and appropriate rationale for each of the functional areas," consider Mr. Kantor's "maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations," and "obtain evidence from a vocational expert to clarify the effect of the assessed limitations on [Mr. Kantor's] occupational base." (AR 234–35, 1515.)

---

[2] "TMJ Syndrome" is also referred to as "Temporomandibular Joint Dysfunction." MedlinePlus, National Library of Medicine, https://medlineplus.gov/temporomandibularjointdysfunction.html (last visited December 6, 2022).

[3] Citations to "AR" are to the Certified Transcript of the Administrative Record filed in this matter on September 7, 2021. (Doc. 10.)

After a second hearing in December 2017, an ALJ denied Mr. Kantor's claim (the "Second Unfavorable Decision"), and Mr. Kantor appealed. (AR 1512–41, 1549–56); *see Kantor v. Saul*, Civ. No. 18-1085 GJF (D.N.M. Sept. 5, 2019) ("*Kantor I*"). On motion by the Commissioner, the matter was remanded to the agency for further consideration. (AR 1547–48, 1554–56); *Kantor I*, Docs. 27 and 28. In its order remanding the matter to an ALJ, the Appeals Council noted that "it is unclear whether the mental limitations in the residual functional capacity assessment[4] [are] consistent with the finding that the mental impairments caused moderate limitations in concentration, persistence or maintaining pace (page 6). Further evaluation of the claimant's residual functional capacity is warranted." (AR 1555.)

At a hearing on March 5, 2020 (the "Hearing"), ALJ Lillian Richter heard testimony by Mr. Kantor, who was represented by counsel, and a vocational expert, Leslie White. (AR 1456-1511). ALJ Richter entered an unfavorable decision (the "Third Unfavorable Decision") on April 22, 2020. (AR 1427–48.) The Appeals Council denied Mr. Kantor's request for review of the Third Unfavorable Decision, and Mr. Kantor filed the instant appeal on August 2, 2021. (AR 1420–23; Doc. 1.)

### B.  The Third Unfavorable Decision

In her decision, ALJ Richter found that Mr. Kantor met the insured status for disability insurance through June 30, 2020.[5] (AR 1433.) Then, applying the Commissioner's five-step sequential evaluation process to determine whether he is disabled,[6] ALJ Richter found at step one

---

[4] In the Second Unfavorable Decision, the ALJ found that Mr. Kantor can "understand, remember, and carry out detailed, but not complex, instructions consistent with the requirements of semi-skilled work. [Mr. Kantor] can occasionally respond appropriately to supervisors, coworkers, and the public. He is better suited to working with things rather than people." (AR 1521.)

[5] Mr. Kantor does not argue that this finding was error. (Docs. 21, 32.)

[6] The five-step sequential evaluation process requires the ALJ to determine whether:

3

that Mr. Kantor has not engaged in substantial gainful activity since his alleged onset date of June 15, 2015.[7] (*Id.*) At step two, ALJ Richter found that Mr. Kantor suffers from severe, medically determinable impairments of fibromyalgia, obesity, obstructive sleep apnea, nocturnal hypoxemia, tear of peroneus brevis with tendinopathy of the right ankle, degenerative disc disease, PTSD, depression, anxiety, mild neurocognitive disorder, and somatic symptom disorder. (*Id.*) At step three, ALJ Richter found that none of Mr. Kantor's impairments meet or medically equal the severity of a listed impairment described in Appendix 1 of 20 C.F.R. Part 404, Subpart P. (AR 1434–36.)

At step four,[8] ALJ Richter found that Mr. Kantor has the residual functional capacity ("RFC") to perform light work[9] as defined in 20 C.F.R. 404.1567(b), and that his capabilities are

---

(1)   the claimant engaged in substantial gainful activity during the alleged period of disability;
(2)   the claimant has a severe physical or mental impairment (or combination of impairments) that meets the duration requirement;
(3)   any such impairment meets or equals the severity of a listed impairment described in Appendix 1 of 20 C.F.R. Part 404, Subpart P;
(4)   the claimant can return to his past relevant work; and, if not,
(5)   the claimant is able to perform other work in the national economy, considering his residual functional capacity, age, education, and work experience.

20 C.F.R. § 404.1520(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the burden of proof in the first four steps of the analysis and the Commissioner has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A finding that the claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991); 20 C.F.R. § 404.1520(a)(4).

[7] Mr. Kantor amended the alleged onset date from March 1, 2015, to June 15, 2015, at the Hearing. (AR 1431.)

[8] Step four involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ must consider all of the relevant evidence and determine what is "the most [the claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is the claimant's residual functional capacity. *Id.* Second, the ALJ must determine the physical and mental demands of the claimant's past work. *Winfrey*, 92 F.3d at 1023. Third, the ALJ must determine whether the claimant is capable of meeting those demands given his residual functional capacity. *Id.* A claimant who can perform his past relevant work is not disabled. 20 C.F.R. § 404.1520(f).

[9] "Light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 CFR 404.1567(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* A person "considered capable of performing a full or wide range of light work . . . must have the ability to do substantially all of these activities." *Id.*

limited in that he can "occasionally climb ramps and stairs[,] . . . never climb ladders, ropes, or scaffolds[,] . . . [and] occasionally stoop, balance, kneel, crouch, and crawl." (AR 1436.) In addition, he must avoid "exposure to unprotected heights and hazardous machinery" and "concentrated exposure to dust, odors, fumes, pulmonary irritants, and extreme cold." (*Id*.) The ALJ further found based on his limitations that Mr. Kantor can

- perform simple, routine work;
- have incidental interaction with supervisors and coworkers;
- have no interaction with members of the public;
- understand and communicate simple information;
- make simple work-related decisions in a workplace with few changes in a routine work setting; and
- perform work in a workplace with no more than a moderate noise level.

(AR 1436–37.) Also at step four, the ALJ found that Mr. Kantor's RFC prevents him from performing his past relevant work as a real estate broker. (AR 1446.)

The ALJ proceeded to step five of the analysis and found that, based on his age, education, work experience, and RFC, Mr. Kantor is capable of adjusting to unskilled jobs that exist in significant numbers in the national economy such as Collator Operator, Routing Clerk, and Marker. (AR 1447.) The ALJ concluded that, because Mr. Kantor can perform these occupations despite his limitations, Mr. Kantor is not disabled under the Act. (AR 1447–48.) The Court provides further background as it is relevant to the issues discussed below.

## II. STANDARD OF REVIEW

The Court's review of the ALJ's unfavorable decision is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied correct legal standards to evaluate the evidence. 42 U.S.C. §§ 405(g); 1383(c)(3); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). In making these determinations, the Court must meticulously examine the entire record but may neither reweigh the evidence nor substitute its judgment for that

5

of the agency. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). In other words, the Court does not re-examine the issues de novo. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993). The Court will not disturb the ALJ's decision if it correctly applies legal standards and is based on substantial evidence in the record. *Hamlin*, 365 F.3d at 1214.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quoting *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003)). It is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118 (quoting *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988)), or "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). The Court's examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262.

"The failure [of the ALJ] to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation marks and brackets omitted). Although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). If the ALJ fails to do so, "the case must be remanded for the ALJ to set out his specific findings and his reasons for accepting or rejecting evidence[.]" *Id.* at 1010.

### III. DISCUSSION

Mr. Kantor argues that the ALJ erred at step four by failing to properly assess his physical and mental limitations and incorporate those limitations into the RFC. (Doc. 21 at 7–25; Doc. 32 at 1–6). Among other arguments, Mr. Kantor takes issue with the ALJ's omission from the RFC of several mental limitations assessed by State Agency Psychologist, Dr. Diane Kogut, Ph.D. (Doc. 21 at 10-13.) Mr. Kantor further argues that the ALJ erred at step five by failing to account for his limitations in a hypothetical posed to the vocational expert and to reconcile a conflict between the limitations in his RFC and the reasoning level required for the possible jobs identified by the vocational expert. (Doc. 32 at 11.) The Commissioner disputes all of Mr. Kantor's arguments. (*See generally* Doc. 29.) For the reasons discussed below, the Court agrees with Mr. Kantor that ALJ Richter erred at step four by failing to either: (a) account, in the RFC, for moderate limitations arising from Mr. Kantor's mental impairments, despite giving significant weight to medical source opinions supporting the limitations; or (b) explain why she rejected the medical source opinions at issue.[10] The Court will therefore reverse the decision and remand this matter for the ALJ to address the errors. *Clifton*, 79 F.3d at 1010. The Court will not address Mr. Kantor's remaining claims of error, because they may be affected on remand. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

Non-examining state agency psychologist Diane Kogut, Ph.D., completed a "Mental Residual Functional Capacity Assessment" ("MRFCA") and "Psychiatric Review Technique" ("PRT") in the initial Disability Determination Explanation ("Initial DDE"). (AR 185–87, 190–

---

[10] Because Mr. Kantor filed his claims in November 2015, ALJ Richter's evaluation of medical source opinions is governed by 20 C.F.R. § 404.1527 (governing evaluation of medical opinions in cases filed before March 27, 2017). *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c (governing evaluation of medical opinions in cases filed after March 27, 2017).

92.) On reconsideration, non-examining state agency consultant Scott R. Walker, M.D., reviewed Dr. Kogut's assessment and additional evidence. (AR 203.) Both Drs. Kogut and Walker completed their evaluations using the electronic Claims Analysis Tool ("eCAT"). *See* (AR 194, 210 (stating the forms were completed through eCAT).) The eCAT MRFCA[11] requires the consultant to "rate" the claimant's limitations regarding four distinct categories of functional limitations: understanding and memory limitations, sustained concentration and persistence limitations, social interaction limitations, and adaptation limitations. (AR 190–92.) The rating questions "help determine the individual's ability to perform sustained work activities." (AR 190.) The consultant is then required to record "the actual mental residual functional capacity assessment" in narrative form in text boxes following each category of limitation, and to record "[a]ny other assessment information deemed appropriate" in the last section of the MRFCA.[12] (AR 190–91.) Thus, the required narrative sections, not the ratings sections, state the consultant's

---

[11] The SSA-4734-F4-SUP form used to record the MRFCA is divided into named sections. *Vienna v. Saul*, No. 18-cv-783, 2019 WL 4686718, at *4 n.8 (D.N.M. Sept. 26, 2019). Although the eCAT MRFCA is not divided into named sections, courts have found that Section I of the SSA-4734-F4-SUP is analogous to the worksheet "rating" portions of the MRFCA eCAT, and Section III is analogous to the narrative portions. *See, e.g., id.* ("Although SSA-4734-F4-SUPs (MRFCAs) completed through eCAT no longer have these section labels, parties and the courts have continued to refer to the checkbox portion of each MRFCA as 'Section I,' and the 'narrative' portion(s) as 'Section III.' "); *Kim L.P. v. Saul*, No. 18-cv-552, 2020 WL 5802927, at *3 (N.D. Okla. Sept. 29, 2020) (discussing the SSA-4734-F4-UP form and the eCAT MRFCA). Thus, what is referred to as the "Section III" narrative in case law corresponds to the narratives associated with each of the four categories and/or the narrative provided in the "additional explanation" box. *See id.* (stating, "*all* narrative responses [on the eCAT MRFCA] are part of a whole and form the completing psychologist's findings regarding the claimant's functional capacity").

[12] The instructions state:

> The questions below help determine the individual's ability to perform sustained work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion. This discussion(s) is documented in the explanatory text boxes following each category of limitation (i.e., understanding and memory, sustained concentration and persistence, social interaction and adaptation). Any other assessment information deemed appropriate may be recorded in the MRFC - Additional Explanation box.

(AR 190–91.)

assessment of the mental residual function capacity. *See Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) (stating that "Section III of the MRFCA, not Section I, is for recording a medical consultant's formal mental RFC assessment, and . . . adjudicators are to use the Section III narrative as the RFC assessment[.]").

However, even when the consultant provides a narrative RFC assessment, "an ALJ can [not] turn a blind eye" to moderate limitations found in the first part of the form. *Id*. This is because "[a]t the ALJ-stage (and thereafter) the entire MRFCA form—all of the findings on the MRFCA form—is considered the doctor's 'opinion.'" *Silva v. Colvin*, 203 F. Supp. 3d 1153, 1159 (D.N.M. 2016); *see Carrillo v. Saul*, No. 1:19-CV-00292-KRS, 2020 WL 6136160, at *6 (D.N.M. Oct. 19, 2020) (stating that the findings on the PRT and MRFCA "constitute medical evidence . . . and must be considered as such by the ALJ"); 20 C.F.R. § 404.1527(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."). Because the consultant's opinion is reflected in the entire form, "[a]n ALJ may rely exclusively on the Section III findings only if the 'Section III narrative does not contradict any Section I limitations and describes the effect each Section I limitation would have on the claimant's mental RFC.'" *Bosse v. Saul*, No. 2:18-CV-00475-LF, 2019 WL 3986046, at *4 (D.N.M. Aug. 23, 2019) (unpublished) (quoting *Fulton v. Colvin*, 631 F. App'x 498, 502 (10th Cir. 2015)). If a consultant's "Section III narrative fails to describe the effect that each of the Section I moderate limitations [noted by the consultant] would have on the claimant's ability, or if it contradicts limitations [so noted], the [narrative] MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Id.* Moreover, when the consultant fails to provide a narrative RFC, the ALJ must address

the consultant's opinions expressed as to each of the four categories of limitations or explain why those opinions were rejected. *Silva*, 203 F. Supp. 3d at 1161 ("ALJs must weigh all of the findings contained in the MRFCA form.").

ALJ Richter stated that she gave the opinions of Drs. Kogut and Walker "significant weight." (AR 1442.) She also stated that she "accounted for their opinions by finding the claimant limited to understanding and communicating simple information and performing simple, routine work," in addition to other "social and other mental limitations[,] such as a moderate noise limitation to account for any PTSD related noise triggers[.]" (AR 1442.) She went on,

> Their opinions were well supported with reference to the longitudinal medical record and are consistent with the record as a whole. For example, their opinions *for unskilled work* are consistent with the claimant's ability to live independently and to care for his own needs (and those of his pets), prepare meals, drive a car, pay bills, etc. See Ex. 6E. Their *opinions for unskilled work* are consistent with treatment records indicating that the claimant's mental symptoms have been generally well managed with medications. Ex. 15F/3-4; 29F/114-15, 97, 128. They are also consistent with the fairly unremarkable mental status examination findings from a consultative evaluating psychologist in February 2016 (i.e., showing cooperative behavior, appropriate grooming, normal speech, and intact memory and cognition, Ex. 17F/4-5) and on most other occasions in the record. *See, e.g.*, Ex. 15F/3, 7; 29F/97; 27F/4; 16F/4.

(AR 1442–43 (emphasis added).) ALJ Richter's treatment of Dr. Kogut's opinions requires remand for two reasons. First, the record does not support ALJ Richter's finding that Dr. Kogut opined that Mr. Kantor can perform unskilled work. This unsupported finding is significant because her analysis of Mr. Kantor's RFC rests substantially on that finding. Second, because Dr. Kogut did not express an opinion of Mr. Kantor's residual functional capacity, ALJ Richter's decision must be remanded because ALJ Richter did not explain how the RFC addresses Dr. Kogut's opinions regarding Mr. Kantor's moderate mental limitations or why she rejected those opinions.

### A. Substantial Evidence does not Support ALJ Richter's Finding that Dr. Kogut Opined that Mr. Kantor can do Unskilled Work.

Dr. Kogut did not provide a narrative explanation of Mr. Kantor's residual functional capacity and did not opine in PRT or MRFCA that Mr. Kantor can do unskilled work despite his moderate limitations. Further, Dr. Walker's opinion that Mr. Kantor can do unskilled work is undermined to the extent it rests on his assumption that Dr. Kogut so opined.

Citing generally to exhibit 2A,[13] ALJ Richter stated that Dr. Kogut "opined that the claimant could perform unskilled work." (AR 1442.) Exhibit 2A is the initial DDE. (AR 180–94.) It is fifteen pages long and includes portions signed by Dr. Kogut, Dr. Edward Bocian, and the disability examiner, Katie Sutton. (*See e.g.*, AR 187, 192, 194.)

Dr. Kogut signed only the MRFCA and PRT portions of the DDE, which were both completed on February 9, 2016. (AR 185–87, 190–92.) On the PRT, Dr. Kogut indicated that Mr. Kantor had moderate "difficulties" in maintaining "social functioning" and "concentration, persistence, or pace." (AR 185.) She provided a narrative explanation in which she opined that Mr. Kantor "does not suffer from a markedly functionally limiting mental health impairment." (AR 187.) But Dr. Kogut did not opine that Mr. Kantor is able to perform unskilled work despite his moderate limitations. (AR 185–87.) Nor would such an opinion have been appropriate, because the PRT is "structured specifically in terms of the B and C criteria of the listings for mental impairments" and is used to "assess mental impairments for purposes of steps two (identifying severe impairments) and three (rating severity for the listings)." *Chrismon v. Colvin*, 531 F. App'x 893, 897–98 (10th Cir. 2013) (citing 20 C.F.R. §§ 404.1520a, 416.920a). The MRFCA, not the

---

[13] In the First and Second Unfavorable Decisions, ALJ Pardo noted Dr. Kogut's February 9, 2016 opinion that Mr. Kantor "did not have any marked functional limitations," but did not state that Dr. Kogut opined that Mr. Kantor can perform unskilled work. (AR 224, 1526–27). In contrast, ALJ Pardo noted in both decisions that Dr. Walker opined that Mr. Kantor could do unskilled work. (*Id.*)

PRT, is intended to capture the consultant's opinion of residual functional capacities. *See Finley v. Berryhill*, No. CV 17-698 SCY, 2019 WL 1118138, at *9 (D.N.M. Mar. 11, 2019) (unpublished) (stating that the PRT and MRFCA serve "distinct" purposes and "the ALJ should rely on the MRFCA to determine a claimant's RFC"); Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996) (stating that "the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process").

In addition, Dr. Kogut did not provide her opinion of Mr. Kantor's residual functional capabilities on the MRFCA. She rated Mr. Kantor moderately limited in his ability to, among other things, maintain attention and concentration for extended periods, accept instruction and respond appropriately to criticism from supervisors, and respond appropriately to changes in the work setting. (AR 191-192.) But she did not provide a narrative assessment of Mr. Kantor's mental residual functional capacity either following each category of limitations or in the box for "additional explanation." (*Id*.; AR 192 (stating "see MRFC" in the box for "additional explanation"). Dr. Kogut did not opine in either the PRT or the MRFCA that Mr. Kantor is capable of unskilled work, (AR 185–87; 190–92), and the ALJ's conclusion that he did is not supported by the evidence.

> Finally, the Court notes that like the ALJ, Dr. Walker also appears to have relied on the same unsupported assumption about Dr. Kogut's opinion. Dr. Walker stated that the "[i]nitial claim was denied in 2/2016 with the mental capacity for unskilled work" and then concluded: The additional [medical evidence of record] appears consistent with the prior assessment, and describes no significant change/decline in claimant's mental status. It appears reasonable to affirm the prior PRT-1 and MRFC dated 02/09/2016 [by Dr. Kogut] with this addendum. Claimant is capable of sustaining unskilled types of work.

(AR 203.) Dr. Walker did not complete a PRT or MRFCA form. (*Id*.) Thus, to the extent Dr. Walker affirmed an opinion not expressed by Dr. Kogut, his opinion is unsupported and erroneous

and further taints the ALJ's decision which gave "significant weight" to Dr. Walker's opinion "for unskilled work." (AR 1442.)

That Dr. Kogut did not complete a narrative assessment forecloses the Commissioner's argument that Dr. Kogut "identified [Mr. Kantor's] broad limitations, and then crafted specific restrictions [to unskilled work] to account for those limitations." (Doc. 29 at 8.) While the Commissioner is correct that an ALJ may rely on a consultant's opinion if it adequately accounts for the ratings of functional limitations in each category, Dr. Kogut did not provide such an opinion because she failed to complete a narrative assessment. *See Carver*, 600 F. App'x at 619 ("[I]f a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding.").

### B. ALJ Richter Failed to Incorporate Dr. Kogut's Opinions of Mr. Kantor's Moderate Limitations in the RFC or Explain why She Rejected Those Opinions.

Since Dr. Kogut did not provide a narrative MRFCA, the only opinions expressed on the MRFCA are that Mr. Kantor has moderate limitations in certain categories. *Silva*, 203 F. Supp. 3d at 1159 (stating that "the entire MRFCA form—all of the findings on the MRFCA form—is considered the doctor's 'opinion.'"). Moreover, even if Dr. Kogut had opined that Mr. Kantor could perform unskilled work, ALJ Richter was obliged to address in the RFC any moderate limitations that were not addressed by restricting Mr. Kantor to unskilled work or explain why she rejected those opinions. ALJ Richter did neither.

A one-for-one correspondence between an RFC and a medical opinion is not required. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on

13

the functional capacity in question."). In some instances, "an administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity." *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016). However, the Tenth Circuit has "generally held that restricting a claimant to particular work activities does not adequately account for the claimant's *mental* limitations." *Parker v. Comm'r, SSA*, 772 F. App'x 613, 616 (10th Cir. 2019) (emphasis added) (citing *Chapo*, 682 F.3d at 1290 n.3). Instead, an ALJ must assess each claimant's mental limitations individually. *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) ("There may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations."); *Spencer v. Kijakazi*, No. 20-CV-00786-NYW, 2021 WL 4133920, at *5 (D. Colo. Sept. 10, 2021) (noting that a case-by-case analysis of the claimant's limitations is required). Hence, "[u]nless the connection (between the limitation and the work) is obvious, . . . [the ALJ] must ordinarily explain how a work-related limitation accounts for mental limitations reflected in a medical opinion." *Parker*, 772 F. App'x at 616.

In addition, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). Rather, if an ALJ rejects a portion of a medical opinion, she must explain why. *Parker*, 772 F. App'x at 617 (stating that where there is a "discrepancy between the agency's assessment of mental capacity and the medical opinions, the agency ha[s] an obligation to provide an explanation"); *see* SSR 96-8p, 1996 WL 374184, at *7 (1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

Here, Dr. Kogut rated Mr. Kantor moderately limited in his abilities to:
- maintain attention and concentration for extended periods,

- perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances,
- complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods,
- accept instruction and respond appropriately to criticism from supervisors,
- respond appropriately to changes in the work setting, and
- set realistic goals or make plans independently of others.

(AR 191–92.) In turn, ALJ Richter found that Mr. Kantor can

- perform simple, routine work;
- have incidental interaction with supervisors and coworkers;
- have no interaction with members of the public;
- understand and communicate simple information;
- make simple work-related decisions in a workplace with few changes in a routine work setting[.]

(AR 1436–37.) Some of the RFC limitations have an obvious connection to the moderate limitations found by Dr. Kogut. For instance, the moderate limitation in ability to "accept instruction and respond appropriately to criticism from supervisors" is addressed by the RFC limitation to "incidental interaction with supervisors and coworkers." (AR 1436); *see Lee v. Colvin*, 631 F. App'x 538, 542 (10th Cir. 2015) (equating the "ability to accept instructions and respond appropriately to criticism from supervisors" with the RFC limitation to "relate to supervisors . . . on a superficial work basis" (ellipses in original)). Similarly, the moderate limitation in ability to "respond appropriately to changes in the work setting" is addressed by the RFC limitation to "a workplace with *few* changes in a *routine* work setting." (AR 1437 (emphasis added); *see Armijo v. Saul*, No. CV 19-1003 GJF, 2020 WL 7056071, at *11 (D.N.M. Dec. 2, 2020) (holding that "the ALJ accounted for [the] opinion that [the claimant] could 'respond appropriately to changes in a routine work setting if introduced slowly,' by limiting him to 'few changes in a routine work setting'").

However, none of the limitations in the RFC obviously address the moderate limitation in Mr. Kantor's ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods," (AR 191), which is a mental ability "critical to performing unskilled work." Program Operations Manual System ("POMS") DI 25020.010B.3.i; *see Peterson v. Saul*, 19-cv-486 JHR, 2020 WL 1911567, at *12 (D.N.M. Apr. 20, 2020) (unpublished) (restriction to simple, routine tasks did not account for a moderate limitation in ability to complete normal workday and workweek without interruptions and perform at consistent pace without an unreasonable number and length of rest periods); *Cordova v. Berryhill*, No. 17-CV-0611 SMV, 2018 WL 2138647 at *8 (D.N.M. May 9, 2018) (unpublished) (holding that limiting the claimant to "simple, routine (or unskilled) work . . . does not account for moderate limitations in her ability to [] complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods"). Likewise, nothing in the RFC's limitation to "simple, routine work" addresses Mr. Kantor's moderate limitations in his ability to "maintain regular attendance, and be punctual within customary tolerances," (AR 191), which is also required for unskilled work. POMS DI 25020.010B.3.e. Indeed, the abilities to complete a normal workday, maintain attendance, and be punctual are among those required for any job. *Id.* at B.2.

Because it is not obvious how the RFC incorporates them, ALJ Richter should have explained how she addressed Mr. Kantor's moderate limitations in the RFC. *Spencer,* 2021 WL 4133920, at *5 ("[A]n ALJ generally must account for moderate limitations 'with precision in the ultimate determination of the claimant's residual functional capacity,' and must express the claimant's moderate impairments in mental functioning 'in terms of work-related functions' or

'work-related activities.'" (quoting *Warren v. Colvin*, 170 F. Supp. 3d 1360, 1364-65 (D. Colo. 2016)). Without an explanation, it is not appropriate for the Court to speculate about what the connection between the RFC and the limitations might be.

In addition, by failing to incorporate the moderate limitations in the RFC, ALJ Richter rejected Dr. Kogut's opinions as to those limitations. *See Spencer*, 2021 WL 4133920, at *9. It was therefore incumbent on her to explain her reasoning sufficiently to permit review. *Id.*; *see Parker*, 772 F. App'x at 615 ("If the agency had decided to omit particular limitations embodied in the two medical opinions, the agency needed to explain the omissions."). Because she did not, remand is warranted. *See Cordova*, 2018 WL 2138647, at *9 ("Without an explanation for why the limitations were omitted, remand is warranted.").

The Commissioner relies on several Tenth Circuit cases for the proposition that the RFC for simple work can account for moderate limitations in the domain of concentration, persistence, or pace. (Doc. 29 at 6.) However, none of those cases require a different outcome here. In *Smith v. Colvin*, for example, the claimant argued that the ALJ erred by not incorporating into the RFC moderate limitations found by the consultant in the MRFCA. 821 F.3d at 1268. The Court found no error. *Id.* at 1269. But in that case, unlike here, the consultant had written a narrative assessment of the claimant's mental residual capacity that incorporated the consultant's moderate limitation findings. *Id.* at 1268. The *Smith* Court stated, "[the claimant] questions how the [ALJ's] assessment incorporates the numerous moderate limitations indicated by [the consultant.] This is the wrong question[ because the consultant's] notations of moderate limitations served only as an aid to her assessment of residual functional capacity." *Id.* at 1269 n.2. It went on, "We compare the administrative law judge's findings to [the consultant's] opinion on residual functional capacity, not her notations of moderate limitations." *Id.* Thus, the Court concluded that, because the

consultant had described the claimant's residual capacity after considering the moderate limitations, the ALJ could properly rely on the consultant's narrative opinion. *Id*. at 1269; *see also Lee,* 631 F. App'x at 541 (finding no error in the ALJ's RFC because the consultant's "narrative—which the ALJ incorporated in his RFC assessment—explained, accounted for, and delimited each of the moderate limitations expressed in [the rating section] of the MRFCA").

The Court in *Richards v. Colvin,* also cited by the Commissioner, rejected the claimant's argument "that simple-work limitations like those in her RFC are never sufficient to address a claimant's mental limitations" and held that the ALJ did not err in determining the RFC. 640 F. App'x 786, 790 (10th Cir. 2016); (Doc. 29 at 7.) However, the *Richards* Court did not enumerate the specific mental limitations at issue, and it is therefore not clear whether the claimant had moderate limitations in the ability to 1) complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods or 2) maintain regular attendance and be punctual, both of which are essential to all work. *Id*. Thus, *Richards* does not support the Commissioner's position in this matter. *See Marquez-Hernandez v. Comm'r, Soc. Sec. Admin*., No. 17-CV-01513-MSK, 2018 WL 2328401, at *7 (D. Colo. May 22, 2018) (unpublished) (stating that "a case-by-case analysis is required to determine whether an RFC's limitations adequately account for all impairments found by the ALJ and supported by the record").

## IV. CONCLUSION

ALJ Richter's finding that Dr. Kogut opined that Mr. Kantor can perform unskilled work is not supported by the evidence. In addition, ALJ Richter failed to explain how she addressed some of Mr. Kantor's moderate limitations in the RFC or why she rejected Dr. Kogut's opinions

of those limitations. These errors preclude judicial review of ALJ Richter's decision and require remand for further proceedings. *Clifton*, 79 F.3d at 1010.

    IT IS THEREFORE ORDERED that Mr. Kantor's Motion to Reverse and Remand for Payment of Benefits or, in the Alternative, for Rehearing (Doc. 21) is GRANTED, and this matter is REMANDED to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.

    IT IS SO ORDERED.

                                                KIRTAN KHALSA
                                                UNITED STATES MAGISTRATE JUDGE
                                                Presiding by Consent